# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| OZARKS COCA-COLA/ DR PEPPER BOTTLING CO., | ) ) ) |
|     Plaintiff/Counter Defendant, | ) ) |
| vs. | )    Case No. 10-3067-CV-S-RED ) |
| AMANDA RITTER and HAROLD RITTER, | ) ) |
|     Defendants/Counter Claimants. | ) ) |

## BACKGROUND

On September 22, 2006, Defendant Amanda Ritter was in an automobile accident. Amanda's husband, Defendant Harold Ritter, was employed with Plaintiff Ozarks Coca-Cola/ Dr Pepper Bottling Company ("Ozarks") at that time. Ozarks provided health benefits to its employees and their dependents through the Ozarks Coca-Cola/ Dr Pepper Bottling Company Group Health Plan (the "Plan"). Amanda incurred $40,500.69 in medical expenses as a result of the automobile accident, which the Plan timely paid. Amanda accepted a $25,000 settlement offer from the insurance company of the driver of the other automobile, which is being held in trust by her attorney pending disposition of this lawsuit. There are two other insurance companies Amanda is currently seeking recovery from based on the accident. Ozarks filed this lawsuit seeking a declaration that the Plan is entitled to reimbursement from Amanda's recoveries related to the accident, up to $40,500.69.

The terms of the 2003 Summary Plan Description (the "SPD") included a Third Party Recovery Provision:

    **RIGHT OF SUBROGATION AND REFUND**

> **When this provision applies.** The Covered Person may incur medical . . . charges due to injuries which may be caused by the act or omission of a Third Party or a Third Party may be responsible for payment. In such circumstances, the Covered Person may have a claim against that Third Party, or insurer, for payment of the medical . . . charges. Accepting benefits under this Plan for those incurred medical . . . expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer . . . the Plan has a Lien on any amount Recovered by the Covered Person whether or not designated as payment for medical expenses. . . .
>
> While the Covered Person may receive payment of such claims pursuant to the terms of the Plan, the Covered Person shall be required to refund to the Plan all medical . . . expenses paid if the Covered Person Recovers from any other party.
>
> **As a condition of participating in and having payments made under this Plan,** the Covered Person . . . agrees to the following provisions as they pertain to this section:
>
> (1) To recognize the Plan's right to Subrogation and [R]eimbursement. These rights provide the Plan with a 100%, first dollar priority over **any** and **all** Recoveries and/or funds paid by a settlement, arbitration award or otherwise and shall not be limited by any other characterization of the nature or purpose of the amounts Recovered or by the identity of the party from which Recovery is obtained. This priority is over any claim, including medical, non-medical or dental charges, attorney fees, or other costs and expenses with the enforcement of the Plan's rights under this Subrogation benefit. . . .
>
> (9) To notify the Benefit Administrator of any Recovery and to repay to the Plan the benefits paid on his or her behalf out of the Recovery made from the Third Party or insurer. The Covered Person recognizes that the Plan shall have a Lien against the proceeds of any Recovery by the Covered Person and against future benefits due under the plan in the amount of any claims paid. . . .
>
> Defined terms: . . .
>
> "Recover," "Recovered," "Recovery" or "Recoveries" means all monies paid to the Covered Person by way of judgment, settlement, or otherwise to compensate for all losses caused by the Injury or Sickness, whether or not said losses reflect medical . . . charges covered by the Plan.

The SPD defines "Covered Person" as "an Employee, Retiree or Dependent who is covered under this Plan."

## DISCUSSION

2

Ozarks has moved for summary judgment on its claim for reimbursement and on the Ritters' ten affirmative defenses and counterclaim.

**A.      Ozarks' claim for reimbursement**

The reimbursement claim is brought pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii), which in part provides, "A civil action may be brought– . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan." A plaintiff seeks "equitable relief" if "the plaintiff seeks to recover 'specifically identifiable' funds, that are due the plaintiff under the terms of the plan, and that are within the defendant's 'possession and control.' " *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Shank*, 500 F.3d 834, 836 (8th Cir. 2007) (quoting *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006)). The Ritters concede Ozarks is seeking funds due under the terms of the SPD. At issue is whether Ozarks is seeking specifically identifiable funds that are within the Ritters' possession and control.

1.      Ozarks seeks to recover specifically identifiable funds

The Supreme Court in *Sereboff* found the plaintiff was seeking specifically identifiable funds because

> the "Acts of Third Parties" provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets-"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"-and a particular share of that fund to which Mid Atlantic was entitled-"that portion of the total recovery which is due [Mid Atlantic] for benefits paid."

*Sereboff*, 547 U.S. at 364. Under *Sereboff*, Ozarks will be seeking specifically identifiable funds if the terms of the SPD specifically identified a particular fund, distinct from the Ritters' general assets, and the particular share of that fund to which Ozarks was entitled. In this case, the terms of the SPD required the covered person "to repay to the Plan the benefits paid on his or her behalf out

3

of the Recovery made from the Third Party or insurer," and defined "Recovery" as "all monies paid to the Covered Person by way of judgment, settlement, or otherwise to compensate for all losses caused by the Injury or Sickness." The particular fund requirement was met by the "out of the Recovery made from the Third Party or insurer" language and the particular share of the fund requirement was met by the "to repay to the Plan the benefits paid on his or her behalf" language. Therefore, Ozarks seeks specifically identifiable funds.

    2.    <u>To the extent Ozarks seeks to recover funds from a settlement offer, it is not seeking funds within the Ritters' possession and control</u>

Ozarks seeks reimbursement from $25,000 that is being held in a trust account by the Ritters' attorney as well as from a $25,000 settlement offer. The Ritters do not have possession or control over the $25,000 settlement offer, as it has not been accepted or liquidated. Ozarks only meets the "possession and control" requirement to the extent it seeks the $25,000 currently being held in a trust account. However, Ozarks is entitled to reimbursement from funds due under the terms of the SPD that come within the Ritters' possession and control in the future, up to $40,500.69.

As Ozarks seeks specifically identifiable funds due under the terms of the SPD that are within the Ritters' possession and control, Ozarks is seeking "equitable relief" and is entitled to summary judgment on its claim for reimbursement.[1]

---

[1] The Ritters recently filed a motion for judgment on the pleadings, arguing Ozarks' claim for reimbursement fails because it is based on the terms of the SPD, rather than the terms of the plan itself. In support of the argument, the Ritters cited *CIGNA Corporation v. Amara*, 131 S.Ct. 1866, 1878 (2011), where the Court opined, "the summary documents, important as they are, provide communication with beneficiaries about the plan, but [] their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." *CIGNA* is distinguishable because the SPD was the only document establishing the terms of the plan. *CIGNA* assumes the existence of both an instrument establishing the terms of the plan and a summary plan description. Moreover, the Eighth Circuit has enforced the terms of a summary plan description as the terms of the plan itself where the summary plan description gave the plan

**B.     The Ritters' counterclaim and second affirmative defense**

The Ritters filed a counterclaim against Ozarks based on its purported failure to provide requested documents in violation of 29 U.S.C. § 1132(c)(1)(B).  The Ritters' second affirmative defense is also based on that statute.  § 1132(c)(1)(B) provides in relevant part,

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Under 29 U.S.C. § 1024(b)(4), the plan administrator is required to provide, upon written request from a participant or beneficiary, "a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

On June 22, 2009, the Ritters requested four types of documents:

> A) Contracts between [the Plan] and Med-Pay, Inc. for the years 2006, 2007, 2008, and 2009.  In particular, I request copies of all contracts including, but not limited to: Insurance [C]ontracts, Stop Loss Contracts, Health Insurance Contracts, Insurance Intermediary Services Contracts, and Administrative Services Contracts;
>
> B) Stop Loss contracts between [the Plan] and any other insurer for the years 2006, 2007, 2008, and 2009;
>
> C) Amendments to the Plan Documents, including, but not limited to the Summary Plan Description for the years 2006, 2007, 2008, and 2009; and

---

a right to reimbursement similar to the Plan's right to reimbursement in this case.  *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007) (opining, "Where no other source of benefits exists, the summary plan description *is* the formal plan document, regardless of its label") (emphasis in original).  Accordingly, the Court **DENIES** the Ritters' motion for judgment on the pleadings (Doc. 105).

D) Copies of the SMM (Summary of Material Modifications) statements for the years 2006, 2007, 2008, and 2009.

The Ritters allege Ozarks failed to produce four sets of documents. The first is 2006, 2007, and 2009 Stop-Loss Contracts with HCC Life Insurance Company ("HCC"). It is undisputed that Ozarks purchased stop-loss insurance coverage from HCC, and the stop-loss insurance coverage was payable to Ozarks and did not directly benefit the Plan or its participants. The stop-loss insurance contract was therefore between Ozarks and HCC, not the Plan and HCC. Because the Ritters only requested contracts between the Plan and other insurers, rather than contracts between Ozarks and other insurers, the 2006, 2007, and 2009 stop-loss contracts were outside the scope of the Ritters' request. Therefore, the Ritters are not entitled to statutory damages on this category of documents.

The next category is 2006-2009 Insurance Intermediary Services Contracts with Med-Pay. It is undisputed that neither the Plan, Med-Pay, nor Ozarks were parties to any "Insurance Intermediary Services Contract." The Ritters are therefore not entitled to statutory damages on this category of documents.

The third category of documents is 2006-2009 Administrative Services Contracts between the Plan and Med-Pay. The Ritters have failed to specifically controvert that the administrative services contracts were between Ozarks and Med-Pay, and that the Plan never had an administrative services contract with Med-Pay. Therefore, the Ritters are not entitled to statutory damages for the third category of documents.

The final category of documents is 2006-2009 Stop-Loss and Health Insurance Contracts between the Plan and Med-Pay. Ozarks asserts those contracts never existed because Med-Pay is not an insurer. However, Med-Pay is named as an insurance carrier for both the Plan and Ozarks on a form ERISA requires to be filed. On the form, the boxes for stop-loss insurance and health

insurance are checked. Therefore, there is a question of fact as to whether Med-Pay was an insurer.

Nonetheless, the Court will not use its discretion to award statutory damages for the fourth category of documents, or for the documents produced 85 days after the Ritters' request. Courts consider prejudice to the plan participant or beneficiary as well as the nature of the plan administrator's conduct in determining whether to award statutory damages. *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006). The Ritters admit they had no need for the documents and the purpose of making the request was to defeat the Plan's right to reimbursement. Because the Ritters did not need the documents, no harm or prejudice occurred. Ozarks' conduct also does not warrant granting statutory damages, as the evidence shows Ozarks produced all documents within the scope of the Ritters' request that were in its possession. While Ozarks produced the 2003 SPD 85 days after the Ritters' request, Ozarks believed it did not need to produce those documents under 29 U.S.C. § 1024(b)(4). Ozarks' conduct was reasonable under the circumstances and does not warrant awarding statutory damages.

### C. **The Ritters' other affirmative defenses**

Ozarks contends it is entitled to summary judgment on each of the Ritters' affirmative defenses. The Ritters asserted ten affirmative defenses, the second of which was addressed above. The others are discussed in turn.

#### 1. The Missouri common law rule prohibiting assignment of a personal injury claim does not apply to the Plan

The Ritters argue Ozarks has no right to reimbursement because Missouri courts refuse to enforce the assignment of a personal injury claim.[2] Ozarks asserts ERISA preempts this Missouri

---

[2]Missouri public policy prohibits a person from assigning a personal injury claim. *Scroggins v. Red Lobster*, 325 S.W.3d 389, 392 (Mo. Ct. App. 2010). Applying this principle,

7

common law rule.

Subject to a few exceptions, ERISA preempts state laws that relate to employee benefit plans. *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990); 29 U.S.C. § 1144(a). One exception is for state laws that regulate insurance. 29 U.S.C. § 1144(b)(2)(A); *FMC Corp.*, 498 U.S. at 58. However, a self-funded ERISA plan is exempt from complying with state laws that regulate insurance. *FMC Corp.*, 498 U.S. at 58, 61; 29 U.S.C. § 1144(b)(2)(B). Even if an ERISA plan is insured, as opposed to self-funded, it is only subject to indirect state regulation. *FMC Corp.*, 498 U.S. at 61. This means states may only regulate the plan's insurance company and not the plan itself.

The Ritters argue that the Plan is subject to the Missouri common law rule because the Plan has failed to establish that the $40,500.69 was paid by the Plan as opposed to an insurance carrier. However, the Ritters admit that *the Plan* paid all of the medical expenses Amanda incurred as a result of the automobile accident. The Ritters also failed to specifically convert that no insurer was responsible for paying expenses covered by the Plan. As the facts show the Plan paid Amanda's medical expenses, this argument fails.

The Ritters further assert the Plan is not self-funded because it was insured through Med-Pay. A plan is self-funded if "it does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants." *FMC Corp.*, 498 U.S. at 52. In this case, two undisputed facts show the Plan is self-funded: (1) no insurer is responsible for paying expenses covered by the Plan; and (2) the Plan is funded through monthly payments made by Ozarks and plan

---

the Missouri Court of Appeals has refused to enforce a reimbursement provision in a health plan. *Id.* (citing *Schweiss v. Sisters of Mercy, St. Louis, Inc.*, 950 S.W.2d 537, 538-39 (Mo. Ct. App. 1997)).

participants. *See id.*; *see also Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 652 (4th Cir. 1991) (finding a plan was self-funded because the employer "contribute[d] all of the funds for coverage of its employees, and employees contribute[d] for coverage of their dependents"). Even assuming Med-Pay insured the Plan, only Med-Pay, not the Plan, would be subject to the Missouri common law rule prohibiting assignment of personal injury claims. That rule has no application to Med-Pay in this case because the Ritters admit that the Plan, not some other insurer, paid Amanda's medical expenses.

The Ritters also argue the Plan is not self-funded because it purchased stop-loss insurance. However, a plan that contracts for stop-loss insurance remains self-funded if the insurance covers the plan as opposed to employees. *Thompson*, 928 F.2d at 653. Here, the Ritters admit the HCC stop-loss insurance is payable directly to Ozarks. It is also undisputed that the HCC stop-loss insurance provides no benefits directly to the Plan or its participants. Because these facts show the HCC stop-loss insurance covered Ozarks, rather than its participants, the plan remains self-funded.

2. The Ritters' anti-inurement defense fails

Subject to a few exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The Ritters first contend that the assets of the Plan inure to Ozarks' benefit because Ozarks is required to fund the Plan, and any reimbursement will reduce Ozarks' obligation to fund the Plan. However, the undisputed facts show that any recovery in this case will not inure to Ozarks' benefit. The Ritters have failed to specifically controvert that (1) when funds are recovered on behalf of the Plan they are deposited into the Plan's trust account and become available to pay

9

medical expenses; (2) any funds recovered in this case will be deposited into the Plan's trust account; and (3) Ozarks only uses funds recovered on the Plan's behalf to fund the Plan. These undisputed facts establish the assets of the Plan are held for the sole purpose of providing benefits to participants and beneficiaries and do not inure to Ozarks' benefit.

The Ritters also assert any reimbursement would inure to Ozarks' benefit because Ozarks is required to reimburse HCC if HCC made payments for any of the expenses. However, it is undisputed that the Plan paid all of Amanda's medical expenses, and that HCC provided no benefits directly to the Plan or its participants. Accordingly, this argument also fails.

  3. <u>Breach of fiduciary duty and unclean hands</u>

In opposing Ozarks' motion for summary judgment, the Ritters assert Ozarks is not entitled to reimbursement because it breached its fiduciary duty in violation of 29 U.S.C. § 1104(a) and because it has unclean hands. These defenses were not pled as affirmative defenses and the Ritters have not asked for leave to amend their answer to include the defenses. For these reasons, the defenses are not properly before the Court and will not be considered.

  4. <u>The Ritters have abandoned their remaining affirmative defenses because they failed to respond to Ozarks' arguments concerning those defenses</u>

In its suggestions in support, Ozarks discussed why each of the Ritters' ten affirmative defenses failed. In responding, the Ritters only addressed the first, second and ninth defenses. Therefore, the Ritters have abandoned their other affirmative defenses. *See United States v. NHC Health Care Corp.*, 163 F. Supp. 2d 1051, 1058-59 (W.D. Mo. 2001) (dismissing several counts because plaintiff's suggestions in opposition to defendants' motion for summary judgment failed to address the defendants' arguments pertaining to those counts).

**D.** **<u>Attorneys' fees</u>**

Ozarks contends it is entitled to attorneys' fees pursuant to the terms of the SPD and ERISA. The SPD states, "[t]he Plan reserves the right to be reimbursed for its costs and attorneys' fees if the Plan needs to file suit in order to recover payment for medical . . . expenses from the Covered Person." Pursuant to 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Courts consider five factors in determining whether to award attorneys' fees pursuant to § 1132(g)(1):

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan*, 574 F.3d 644, 651 (8th Cir. 2009). After considering the factors, the Court finds an award of attorneys' fees may be warranted on Ozarks' claim for reimbursement. Ozarks shall file an application for attorneys' fees with an itemized list of hours billed on the claim for reimbursement within twenty (20) days from the date of this Order.

## **CONCLUSION**

The Court grants summary judgment to Ozarks on its claim for reimbursement because it is seeking "equitable relief" and the Ritters' affirmative defenses fail. Summary judgment for Ozarks is also proper on the Ritters' counterclaim because Ozarks produced the existing documents that were within the scope of the Ritters' request. The Court will consider an application for attorneys' fees to the extent Ozarks incurred fees prosecuting its claim for reimbursement. For the reasons discussed in Footnote 1, the Ritters' Motion for Judgment on the Pleadings is **DENIED** (Doc. 105). Finally, the following motions are **DENIED** as moot in light of this Court's ruling: Ozarks' Motion

to Strike (Doc. 95), Ozarks' Motion in Limine (Doc. 107), and the Ritters' Motion to Continue (Doc. 118).

**IT IS SO ORDERED**.

DATED: June 22, 2011  /s/ Richard E. Dorr
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT